My name is MJ Hayden. I'm an assistant federal published offender for the District of Alaska, and I'm here representing Mr. Jerry Franklin. We're here today to address the legality of a warrantless inventory search of three closed containers, a backpack, a wicker basket, and a white cardboard box. If we assume that all of those three containers were closed within the Alaska statute, and if we take a look at Daniels, then the magistrate judge was just dead-bang wrong. Yes, sir. He was just completely wrong because he did not recognize the two exceptions to the Fourth Amendment rule relative to federal trials and evidence. Is that the crux of your case? That's correct. Okay. If we go that far, then we go back to the containers, because then we've got to look and see whether it was a closed container. And you have the wicker basket with the blanket on it. You have the zippered-up backpack. There are cases saying that maybe you can abandon something, and it could be subject to that kind of a search. Was there any kind of an abandonment? As I understand it, the magistrate judge found there was no abandonment with regard to the radio or stereo that was stuffed into the backpack, even though the defendant was given a chance to take anything out that he wanted to. Do we have an issue there? Your Honor, I don't think we have an issue there because the magistrate did find that there was no abandonment of the backpack or the wicker basket. Well, if we find that he was dead bang wrong on the wall, what do we do with this factual finding? Well, Your Honor, the factual finding of abandonment would have to stand unless it was clearly erroneous. And I think that this Court can look at the facts. The facts of the case are that the officer gave Mr. Franklin an opportunity to take anything out of the vehicle, but did not make it a take-it-now or forever forfeit. What about the basket? This is the one I'm mulling over in my mind. The backpack, it's got zippers in it, it's closed, it's got the box. The wicker basket, as I understand it from the record, and maybe you can help me on this, seems to be partially covered with a blanket. Is that right? In the transcript of the evidentiary hearing, on page 52 of the transcript, you can see that the officer testified that there was a blanket covering the open part and that just by looking at the basket, he could not see inside of it. He could tell it was a wicker basket, but he couldn't see the items inside. Did the basket have a lid that was integral to the basket, or was the covering this other covering on top of the basket? The basket did not have a lid. The basket was simply covered with a blanket on the top so that all the items in the basket could not be seen from the outside of the basket. So we take the position that this is the paper bag versus the Gucci briefcase, one man's closed container is not the same as another man's closed container. Doesn't this turn, being we're dealing with Alaska law, doesn't this turn on the concern with Alaska about the right of privacy, and this is all based upon that right of privacy as dictated by the Alaska Constitution? That's correct, sir, and I would argue that when Mr. Franklin put the articles inside the wicker basket and then covered the opening of the wicker basket with the blanket, he therefore had an expectation of privacy in the articles contained in the basket. Whether or not the basket came with its own lid or not, Mr. Franklin made a lid and therefore closed the basket with the blanket. So I think we do have closed containers, and, of course, the box, the white box, was inside of the basket. And so you got this basket looking at the transcript with this blanket, and when they open it, they see this blue pan, but that wasn't something they could see without taking the blanket off. Is that right? It's my understanding from the testimony on page 52, and I think it even goes over to 53, that he could not see anything inside of the basket until he removed the blanket. He could see the basket, but not what was inside of it. So the reference is to I could see the basket, and then we look at these photos, or the wicker or the rattan part of the basket. Okay. And I believe he's saying this wasn't a basket sitting on the floor with a blanket totally draped over the top of it. The blanket was specific to the opening of the basket so that it was covering all the articles. So one could pick up the basket and still have the blanket on top covering all the articles inside. Without abandoning, if I can use this word, your argument that this is a closed container within the meaning of the Alaska case law, you have a backup argument under the Anchorage Police Department procedures, which is to say they're not to do anything except that which is in plain view, correct? Correct. And obviously, if you've got a blanket over it, what's inside covered by the blanket is not in plain view. That's correct. So whether or not it's closed within the meaning of Alaska State law, you've got this other argument? Correct, Your Honor. Your Honor, there's two components. There's the Alaska State law case, Daniels, that says one is not the police officer is not to open any closed container during the inventory search. And then you have the Anchorage Police Department policy that allows the police officer to look for obvious articles of value. And is the theory of our deference to both State law and local police procedures that someone who is leaving his car to be impounded may reasonably expect that all closed containers or things not in plain view are not going to be searched without a warrant? I mean, is that the idea? Under Alaska law and under the Anchorage Police Department. But I'm asking under Federal law. I mean, this is Federal law that's incorporated these exceptions for State law and State practice. I mean, I'm trying to figure out what's the underlying rationale. And it seems to me that the underlying rationale is that if we assume that someone basically understands the law, because a vehicle is being impounded and is being asked do you want to take anything with you, he knows there's going to be or should know there's going to be an inventory search, but that the inventory search will not go beyond anything that's in plain view. I think if that individual was knowledgeable about the Anchorage Police Department policy and knowledgeable regarding Alaska case law, then one could reasonably expect that no closed container would be open during the inventory search. Or, to state it more broadly, if you've got a problem with your definition of closed container, nothing that is not in plain view. Correct. If you went even farther, it seems to me in reading your brief and the cases, and especially the Alaska Supreme Court case, Daniels, it seems to me that Alaska has taken a stand. They said, look, we value the right of privacy. Even if the person driving the car has no idea of the Alaska Supreme Court or anything else, if he covers something up or she covers something up, they do it because they don't want people to see it. So they don't have to know the law. They say, I want this to be private. Then you have to interpret how they did it. Now, if he covered the wicker basket with a blanket and on top of the blanket said, good drugs inside, marijuana, cocaine, heroin. Now, we may have a closer case, but this was just a wicker basket with the clothes on the top, and it was just, doesn't that fit within why we accept, according to Daniels and the federal law, the interpretation Alaska gives to the right of privacy? Yes, Your Honor, that's our position, that Alaska extends the right of privacy, more so than the federal Fourth Amendment. I was trying to, I'm just trying to reconstruct this. You were the attorney in the district court, correct? Yes, yes, I was. Okay. And then I'm reading his statement that is the magistrate's statement says, in this federal prosecution, the court is not limited by Alaska Supreme Court's more narrow holding based on Alaska state law. And the court's referring to Daniel. But then there's a motion for, there's objections to these findings by you in which you point out that inventory searches are different. But then, just to make sure I understand, those aren't credited, basically, and the district court simply affirms the magistrate's ruling? Is that how it all happened? The magistrate court addressed my objections, but stated that, in this particular instance, the magistrate thought that Alaska state law would not apply. Would not apply. Contrary to the wineless holding of this court. Correct. And you had alerted the magistrate judge to our wineless case? Yes, I did. Okay. And my objections. And your objections, you note that. Okay. And we saw that in the record. That's what was astonishing of how the judge, after you threw all this law at him, the magistrate judge just turns around, like I said, dead bang wrong, and says, I'm going to apply federal law. Why don't we hear from the government? Thank you. Good morning, Your Honors. May it please the Court. Good morning. My name is James Barkley. I'm representing the District of Alaska in the Franklin case. There was a question from the panel concerning the notation in the Anchorage Police Department Municipal Code concerning inventorying only items which are in plain view. I would only note for the record, Your Honor, in response to that question, that the Anchorage Municipal Code, which I understand counsel has filed under seal in this case, as part of the record, indicates that under provision capital B authority to impound one subpart C, small c, the plain view notation was only made for some reason in the context of an impound for DWI or forfeiture. That is, in the context of a criminal investigation. And so there might be this may raise notions of search as incidental arrest, but obviously, some criminal parlance found its way into the ordinance there, which does not exist in the context of an impound for a traffic violation, a noncriminal context, which the government feels is significant in this case because the contention is that an inventory search is purely an administrative exercise and not a criminal investigation. Well, if we start with first principles here in terms of the circuit law and then the application of Daniel, do you agree that under Wanlis that routine inventory searches can be sustained only if they are performed in accordance with State law? Yes. Okay. So in that regard, the magistrate judge was mistaken in rejecting Daniel as the baseline. Would you agree with that? I would agree. So if we apply Daniel, which says you can't search in these circumstances, are we then left to benchmark whether or not these items are closed containers? Is that where we're really left in terms of the government's dispute in this case? I don't think so, Your Honor. All right. And here's why not. There's a footnote 7 in Wanlis, which among these cases, I think, has acquired a great deal of significance. It reads in relevant part in the last part of the footnote as follows. We think it fair to presume that the Washington State Troopers, as a matter of course, follow Washington law as set forth by the State's highest court. This Court will recall that in Wanlis what the Court decided was whether an advisement to the owner of the vehicle had been properly provided by the Washington State Troopers in advance of an inventory search being conducted, the driver being given an opportunity to waive any protection in terms of a property claim that might have been afforded by the officers conducting such a search. This advisement idea was not something that was embodied in a code of regulations like the City of Boulder regulations in Bertine. And I think in this case, it's clear in Wanlis the government argued that, Your Honors, this is unreasonable to assume that a police officer or a State Trooper should be conversant with all the nuances and legal details of a Washington Supreme Court opinion. This Court firmly said, no, we expect them to do so. And I submit today, Your Honors, that it is simply also fair, then, to allow a law enforcement officer to be familiar with the nuances of the decisions of the Alaska Supreme Court. Here are three reasons why this officer, what he did was perfectly justified under the Daniel decision, why this Court doesn't have to affirm or I should say reverse and suppress the evidence in this case. Reason number one is footnote number 33 at page 416 of the Daniel opinion itself. Excuse me, which footnote? Footnote 33? 33? Yes, Your Honors. Footnote 33 at page 416 of the Daniel opinion. Okay. In that footnote, the Court says, We note that the record establishes that Daniel exhibited an actual expectation of privacy concerning the contents of his briefcase. If I point out in Daniel, Daniel was the owner of the vehicle. Mr. Daniel was not the operator only. He was the owner of the vehicle. And the case law at the time Daniel was decided, 1979, clearly allowed some derivative expectation of privacy from the fact that the items inside the vehicle were in a vehicle owned by the person who was also operating them. Well, if we're going to get down that low, the briefcase was a Samsonite briefcase that was closed, but the latches were up. Do we have to get down to the fact that the latches are up? Absolutely not, Your Honor. Well, tell me why he – tell me what significance this has. I mean, you're arguing that. What's the difference between Daniel's and the briefcase with the latches up in the case we have? Because what the Court – the significance, Your Honor, is this footnote that I'm pointing out, the language that I just read, says that there is a notion that the expectation of privacy must be analyzed by the reviewing court. No. I mean, I guess I might disagree with you there. I think to read – first of all, I'm not sure that's – well, maybe part of footnote 33, but in my Westlaw version, it seems to be part of the text. But if you back it up, here's what the Court says before that. It talks about the section of the Alaska Constitution. It says, that section of the Constitution affords protection to any closed luggage, briefcases, containers, or packages within a vehicle which is subjected to an inventory search. That seems to be a fairly clear statement of the law of Alaska. They go on to note that in the record, there's also an actual expectation of privacy in his briefcase. But the Court never says that having made that broad statement about closed containers, you must also go into a subjective expectation of privacy analysis. I mean – Your Honor, the text of footnote 33 refers to Smith v. State. Smith v. State, right. The citation there. And it says that the test that we have embraced requires, first, that a person have exhibited an actual subjective expectation of privacy, and, second, that the expectation be one that society is prepared to recognize as reasonable. Right. But they say clearly that the protection is afforded to any closed container. Footnote 3 just looked like boilerplate to me, I have to say. And the key sentence that Judge McEwen just read to you has a footnote, but it's footnote 31, which is citation to State v. Opperman, which is – you know, I just don't see much in footnote 33. That's what law clerks write when they just need a little filler. I apologize to law clerks for saying that. But maybe what you're – you know, obviously, these concepts are folded into each other when you get to the notion of what you have. But if you have a vehicle with closed containers in it, why would there not be – why would that not be an indicia that you want to keep those from public view? Here's why not, Your Honor. Okay. And this, I think, is why this is linked – the reasonable expectation point in this footnote is linked to the issue of abandonment. The issue of abandonment, if the Court looks at the record below, clearly a district court only made a finding with regard to whether there had been abandonment for purposes of standing. After that, the government attorney who was conducting the hearing gave up on the issue and said, this person is standing to challenge, to move to suppress the evidence. But the issue of abandonment is significant in that the person was told, Mr. Franklin was told, you can take whatever you want out of this vehicle. He then, during that very colloquy, shows the officer something that he indicates by his words and his actions is valuable to him, that is something that is going to be likely a claim if it is missing for whatever reason. Could be a million dollars inside it or a gun or whatever. He puts it in the backpack in the presence of the officer. The officer then parts company with him and goes back to his vehicle. Now the officer does not know by the time Franklin left the scene whether it is still in the pack or not. And it is at that point that the reasonableness of Mr. Franklin's expectation of privacy diminishes. At that point, the government's view is that the Fourth Amendment is not a toggle switch that is on or off. It is a dimmer switch. His expectation of privacy was very strong in that closed container until the time he left the scene after being told that he could take his backpack with him and he said that he was going to. That's the difference. The government does not fault Mr. Franklin for leaving the scene. He was told that he could do it. But he is responsible for a diminished expectation or a less reasonable expectation of privacy in that backpack once he told the officer, this matters to me, and then he left it on the seat. That is the distinction. And, in fact, in what — Let me get my facts straight. My understanding is that after the officer says you can take anything with you that he wants, he takes the sort of — it's one of these removable stereo things. Yes, sir. He takes it out of the console. He puts it into the backpack. He zips it into the backpack, and he leaves the backpack with the stereo thing on the front seat of the car. Does he say anything as he does this, say anything to the officer? He does, Your Honor. What does he say? The officer's testimony simply says that he mentioned, so there's no qualified — there's no quotation. He mentioned a car stereo and a speaker, and that's all that was said. There was some dialogue with the exact words in it. He doesn't say to the officer, I am going to take those with me? No. But in response to the officer's advisement, you can take something with you, he then put this in the backpack. But he didn't take it with him. No, he didn't take it with him. He didn't take it with him. So he left it in the car. He left it there. Isn't that manifest when he zips up the zipper that he wants it protected under a closed container, and the officer never saw it laying around anywhere, but he decides he wants to look around and find it? I'll tell you, I understand your argument. It's a good argument. But I have a problem. It sounds like you should be making this to the Alaska Supreme Court. For instance, Judge McKibben — McKibben, excuse me. Judge McKeown — He just moved to Nevada. I'm Nevada. I'm sorry. McKibben put a hex on me. The passage read by Judge McKeown relates to the Alaska Constitution and the principles and the policies behind all this. It sounds like you're arguing policies and principles. What they say in the last sentence before the Note 33 is, we think that the protection of the interiors of closed luggage, briefcases, containers, and packages transported in a vehicle reflects fundamental expectations of privacy, which Alaska society would recognize as reasonable. It sounds like you're arguing against that policy and that we'd have to change the policy on which the Alaska Supreme Court ordered. I don't think you'd be changing the policy, Your Honor. And again, I'm responding. I realize my time has expired. No, please. Thank you. I — the argument is this, Your Honor. The Daniel case is so factually dissimilar that this Court is not doing any violence to it or showing any disrespect for the decision of the Alaska Supreme Court. It is clear that in Daniel, Mr. Daniel owned the car. Mr. Daniel got out of the vehicle against the instructions of the officers, got back in his vehicle, asserting physical control over his vehicle. He then threw his keys — showed them to the officers and threw his keys in a snowbank to demonstrate graphically how no one was to go in his vehicle. This is so radically different from a situation where a person is told, if you want anything out of this car, take it out of the car. The car isn't even this gentleman's car. He's a total stranger to it, entitled and to every other respect. And then the man walks away after having signaled that the one thing that was of value to him, implicating the Anchorage Police Department's only articulated policy for protecting property, and he walked away from the scene without the backpack. This is so different from Daniel, Your Honor, that this Court does not have to apply it in the same manner it did in Wanlis with regard to the advisement or in Johnson with regard to showing a manifest necessity to open a closed trunk. Thank you. Thank you, Your Honor. Did you want any rebuttal, Ms. Ed? All right. The case just argued. The United States v. Franklin is submitted. I thank both counsel for their arguments this morning. We'll next move to United States v. Zavala.
judges: Brunetti, McKeown, W. Fletcher